Pauline BENN, Plaintiff/Appellee,

v.

Carolyn M. WOLF and Richard Wolf,
Defendants/Appellants.

Civ. No. 9503.

Supreme Court of North Dakota.

Feb. 1, 1979.

Johnson, Milloy, Johnson, Stokes & Robinson, Ltd., Wahpeton, for defendants and appellants; argued by A. Warren Stokes, Wahpeton.

Bailey & Lies, Wahpeton, for plaintiff and appellee; argued by Colin A. Bailey, Wahpeton.

PAULSON, Justice.

This is an appeal by the defendants, Carolyn M. Wolf and Richard W. Wolf [hereinafter the Wolfs], from a judgment of the Richland County District Court entered on March 29, 1978. The Wolfs were the owners of a home situated in the City of Wahpeton and were interested in selling it. Pauline Benn [hereinafter Mrs. Benn] learned that the Wolfs' property was for sale through James R. Bokinskie, manager and vice president of the Wahpeton branch of the Metropolitan Federal Savings & Loan Association. Mrs. Benn then contacted the Wolfs.

During the period of negotiations, the Wolfs and Mrs. Benn agreed on a sales price of $38,500.00, and it was further agreed that the Wolfs would pay all of the unpaid special assessments. Mr. Wolf, prior to signing the earnest money contract between the parties, had contacted Wahpeton city officials in order to determine the amount of the special assessments with reference to this property. Mr. Wolf testified that the special assessments approximated $2,000.00, and the Wolfs stated that the unpaid special assessments covered not only sewer, water, curb and gutter projects, but also included the street improvement project which had been completed in 1975. The assessment for the street improvement project had not been certified against the premises by the city, and thus was not included in the $2,000.00 special assessment figure which covered only the sewer, water, curb and gutter projects. Mr. Wolf also stated that he had read the resolution of necessity which had been published by the city in the official Wahpeton newspaper with reference to the street improvement project, but that neither he nor his wife had appeared before the designated city officials in protest or entered any objections thereto.

Mrs. Benn testified that she had contacted Mr. Bokinskie of the savings and loan association and indicated to him that she desired that all of the unpaid special assessments be paid in full by the sellers, the Wolfs, because her finances were limited and, in addition, she stated that she had so informed the Wolfs. The Wolfs and Mrs. Benn, after the negotiations had been completed, entered into an earnest money contract dated June 3, 1976. The contract by its terms provided for the sale price of the property at a figure of $38,500.00; that a warranty deed would be delivered to Mrs. Benn on or before August 1, 1976; and that possession of the property would coincide with the delivery of the deed. The earnest money contract was drafted by Mr. Bokinskie, and the provision designated as Section 5 was inserted by being typed onto the printed form of the earnest money agreement, and provides:

"5. Seller agrees to pay all unpaid special assessments."

Subsequent to the completion of the sale of the property and the disbursement of the proceeds of the sale, the special assessments for the street improvement project were certified against the premises by the City of Wahpeton, in the sum of $1,962.35. Mrs. Benn received her tax statement in December of 1976 and then learned that her tax statement included the additional special assessments of $1,962.35 for the street improvement project. She immediately notified the Wolfs. The Wolfs both stated that they were surprised, that there must have been a mistake made, and that all of the special assessments, including the special assessments for the street improvement project, had been paid in full.

Mrs. Benn commenced suit against the Wolfs when they refused to pay the street improvement project special assessments. The district court, after the conclusion of the trial, awarded judgment to Mrs. Benn for the amount of the unpaid special assessments. The Wolfs then appealed to this court from such judgment.

The sole issue involved in this appeal is whether or not the provision, Section 5, in the earnest money contract wherein the sellers, the Wolfs, agreed to pay all unpaid special assessments is breached by the sellers' failing to pay the special assessments for the street improvement project which was installed in 1975 but the special assessments for which were not certified against the premises at the time of the sale of the property in 1976.

The Wolfs strenuously assert on this appeal that the trial court erred in its interpretation of the earnest money contract, and particularly of Section 5 thereof, which states: "Seller agrees to pay all unpaid special assessments."

■ Construction of a written contract to determine its legal effect is a question of law for the court to decide. *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978); *Metcalf v. Security International Insurance Company,* 261 N.W.2d 795 (N.D.1977); *Floyd v. Ring Const. Corp.,* 165 F.2d 125 (8th Cir. 1948). Thus, the trial court's interpretation of Section 5 of the earnest money contract involved a question of law. This court will independently examine and construe the contract to determine whether the trial court erred in its interpretation of the contract.

■ The trial court concluded that the Wolfs were liable for the payment of the special assessments, as set forth in Section 5 of the earnest money contract. We agree. After a perusal of the earnest money contract and of Section 5 thereof, we conclude that Section 5 expresses the clear intent that the sellers were obligated to pay the special assessments which were due and owing as a result of the street improvement project. The Wolfs contend that, pursuant to Section 5 of the contract, the special assessments for the street improvement project were not "unpaid" because they were not due, and because such special assessments had not been certified against the premises by the City of Wahpeton at the time of the sale closing. In support thereof, the Wolfs cite §§ 40–24–01, 40–24–02, and 40–24–03 of the North Dakota Century Code. These statutes provide that until special assessments have been certified by the governing body of a city, such special assessments are not a lien on the property. The Wolfs' argument is unpersuasive.

A review of the contract and of the record reveals that Mrs. Benn and the Wolfs both intended that all of the unpaid special assessments were to be paid by the Wolfs. Further, Mr. Wolf, by testifying that he had read the notice of publication in the official Wahpeton newspaper of the resolution declaring the street improvement project necessary, specifically revealed that he had actual notice of the street improvement project, and, further, that he had not appeared before Wahpeton city officials and objected to the project. In addition, the street improvement had actually been installed in 1975. The Wolfs should have known that special assessments for curb and gutter and water and sewer projects, plus a street improvement project, would greatly exceed the sum of $2,000.00 in special assessments, as revealed by the record in this case.

The cases cited by the Wolfs are distinguishable on their facts, and involve, generally, actions for breach of covenants contained in deeds and were not actions with reference to earnest money contracts.

■ The Wolfs further urge that in construing a contract, where there is a dispute with reference to its terms, the contract shall be construed against the party drafting the contract. While this is the generally prevailing rule of law, the Wolfs' assertion is unpersuasive. Here an earnest money contract was drafted by an officer of the savings and loan association with a suggestion by Mrs. Benn concerning the payment of all unpaid special assessments. She,

however, did not provide the specific language used in Section 5 of the contract and was not the draftsman thereof. Furthermore, all of the parties to this contract were being financed by the same savings and loan association. The cases cited in support of the Wolfs' argument are again distinguishable on their facts.

In the instant case, if the Wolfs are to recover on the basis of mistake they must come within the provisions of § 9–03–13, N.D.C.C., relating to mistakes of fact, or the provisions of § 9–03–14, N.D.C.C., relating to mistakes of law. These sections provide:

"9–03–13. 'Mistake of fact' defined. —Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

"9–03–14. 'Mistake of law' defined. —Mistake of law constitutes a mistake within the meaning of this title only when it arises from:

1. A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or

2. A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify."

We find no basis in the facts of this case for the application of § 9–03–14, N.D.C.C., on the ground that none of the parties have either argued or presented the issue of a mistake of law.

■ If it could be urged that the Wolfs were mistaken with reference to the provision of Section 5 of the earnest money contract and that there was a mistake of fact, we believe that the record reveals that there is no basis for a mistake of fact. *See Security State Bank of Wishek v. State,* 181 N.W.2d 225 (N.D.1970); *Dardis v. Eddy Brothers,* 223 N.W.2d 674 (N.D.1974). The Wolfs further allude to a mistake of fact because of the Wolfs' alleged misunderstanding of the provision of Section 5 of the earnest money contract. However, the record fails to reveal that such a mistake of fact actually existed.

In summary, a review of the record shows that it is undisputed that Mrs. Benn entered into the earnest money contract intending that all unpaid special assessments were to be paid by the Wolfs; and that the parties entered into the contract with the understanding that the Section 5 provision in the earnest money contract with respect to the payment of unpaid special assessments included not only curb, gutter, water, and sewer projects, but the street improvement project as well. Furthermore, the contract does not provide any figure limiting the amount of the unpaid special assessments for which the Wolfs would be obligated. The Wolfs were aware of the street improvement which was installed in 1975. Mr. Wolf testified that he had read the resolution of necessity published in the official Wahpeton newspaper and that neither of the Wolfs had appeared before the designated Wahpeton city officials to protest the street improvement project. Thus, as a matter of law, the Wolfs had actual notice, under § 1–01–23, N.D.C.C.

■ We conclude from a perusal of the record in this case that there are no grounds for a rescission of the contract § 9–09–02, N.D.C.C.

We cannot say that the court erred in concluding that Mrs. Benn was entitled to recover for the special assessments pursuant to the provision in the earnest money contract.

The judgment is affirmed.

ERICKSTAD, C. J., and SAND, VANDE WALLE and PEDERSON, JJ., concur.