PARK VIEW MANOR, INC., a North Dakota Corporation, Plaintiff and Appellant and Cross-Appellee,

v.

HOUSING AUTHORITY OF the COUNTY OF STUTSMAN, Jamestown, North Dakota, a Public Corporation, Defendant and Appellee and Cross-Appellant.

Civ. No. 9627.

Supreme Court of North Dakota.

Dec. 20, 1979.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for plaintiff and appellant; argued by John Hjellum, Jamestown.

Gilje, Greenwood & Dalsted, Jamestown, for defendant and appellee; argued by Charles J. Gilje, Jamestown.

PEDERSON, Justice.

This is an appeal by Park View Manor (PVM) and a cross-appeal by Housing Authority of the County of Stutsman (Stutsman) from a judgment entered after a trial to the court without a jury. That judgment awarded Stutsman the sum of $726.78, plus interest. The judgment is based upon findings of fact made by the trial court and separately stated conclusions of law. Rule 52(a), NDRCivP. The judgment is reversed and the case is remanded for purposes set forth herein.

After a one-day trial, the presiding judge issued a memorandum decision in which facts and law were discussed and a decision

announced. The memorandum ended with: "Counsel for the defendant [Stutsman] may prepare the appropriate Order." Findings of fact, conclusions of law, and order for judgment were accordingly prepared and adopted by the trial court. We quote in full those findings of fact and conclusions of law:

## "I.

"The Court finds as facts the allegations contained in paragraphs numbered 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, and 16 of the plaintiff's [PVM's] Complaint, and by this reference incorporates the same into these Findings of Fact in their entirety as if separately set out herein.

## "II.

"The Court finds as a fact that with reference to lease known as ND–11–1, plaintiff [PVM] is entitled to payment from the defendant [Stutsman] for any excess of taxes over $15,064.18, and the defendant [Stutsman] is entitled to payment from the plaintiff [PVM] for any amount less than $15,064.18, levied against the subject real estate for the years 1975, 1976, and 1977.

## "III.

"The Court finds as a fact that with reference to leases known as ND–11–2, ND–11–3, and ND–11–4, plaintiff [PVM] is entitled to payment from the defendant [Stutsman] for any excess of taxes over $9,127.64, and the defendant [Stutsman] is entitled to payment from the plaintiff [PVM] for any amount less than $9,127.64, levied against the subject real estate for the years 1975, 1976, and 1977.

## "IV.

"This Court finds as a fact that the real estate taxes for 1975, 1976, and 1977, were as follows:

ND–11–1

| | |
|---|---|
| 1975 | $15,150.23 |
| 1976 | $15,451.34 |
| 1977 | $13,678.80 |

ND–11–2, ND–11–3, and ND–11–4

| | |
|---|---|
| 1975 | $9,561.63 |
| 1976 | $9,786.16 |
| 1977 | $8,230.52 |

## "V.

"That as to ND–11–1, the plaintiff [PVM] is entitled to payment from the defendant [Stutsman] for increases in 1975 and 1976 taxes in the amounts of $86.05 and $387.16, respectively, and as to ND–11–2, ND–11–3, and ND–11–4, for the amounts of $433.99 and $658.52 for 1975 and 1976, respectively, for a total due plaintiff [PVM] from defendant [Stutsman] in the sum of $1,565.72.

## "VI.

"The Court finds as a fact that the defendant [Stutsman] is entitled to payment from the plaintiff [PVM] for the reduction in 1978 tax in the amount of $1,385.38 on the real estate subject of ND–11–1, and the sum of $897.12 for the reduction in 1978 tax on the real estate subject of ND–11–2, ND–11–3, and ND–11–4 for a total due defendant [Stutsman] from plaintiff [PVM] in the sum of $2,282.50.

## "VII.

"This Court finds that crediting the plaintiff [PVM] with the amount specified in paragraph V hereinbefore, the defendant [Stutsman] is entitled to a judgment from the plaintiff [PVM] in the sum of $716.78.

## "VIII.

"That the plaintiff [PVM] has failed in its burden of proving that its actual costs of operation and maintenance for the fiscal years ending September 30, 1976, and September 30, 1977, exceeded in either year $1,800.00.

## "IX.

"That should either party hereto consider an issue or material fact undetermined, this Court finds as a fact that any

such issue or material fact was not proved by the party having the burden of proof.

"From the foregoing facts, the Court concludes:

## CONCLUSIONS OF LAW

### "I.

"That the law herein is with the defendant [Stutsman] and against the plaintiff [PVM].

### "II.

"That the defendant [Stutsman] is entitled to Judgment against the plaintiff [PVM] in the sum of $716.78.

### "III.

"That the defendant [Stutsman] is entitled to and shall have Judgment against the plaintiff [PVM] for the costs and disbursements of this action."

Some of the background may be useful in understanding this case. The dispute involves the meaning of certain provisions in four leases between the parties. Previous litigation arose because the parties could not agree as to the meaning of certain lease terms. That litigation ended when the parties agreed to a stipulation which apparently was intended to be a clearer and more understandable statement of the disputed provisions in the leases. In effect, the pertinent terms of the stipulation supersede the lease provisions which caused the initial dispute. Those stipulated provisions are:

### "III.

". . . Should real estate taxes for any year during the term of this lease commencing with 1975 exceed $15,064.18, the defendant [Stutsman] shall reimburse the plaintiff [PVM] for the excess above and beyond $15,064.18 at the time as hereinafter specified. Should taxes for any year during the term of the lease commencing with the tax year 1975 be less than said figure of $15,064.18, plaintiff [PVM] shall reimburse defendant

[Stutsman] in the same manner for such difference. . . . .

. . . . .

### "V.

"When the actual costs of operation and maintenance, as operation and maintenance are hereinafter defined, shall exceed in any one year $1,800.00, the defendant [Stutsman] shall pay to the plaintiff [PVM] the difference between the actual costs of operation and maintenance over and above said $1,800.00. The terms 'operation', 'maintenance', 'operation or maintenance', or 'operation and maintenance' shall include actual costs of repairs necessitated by ordinary wear and tear. Said terms shall also include for purposes of this stipulation and the lease the actual costs of rental of water heaters.

"The terms shall exclude, without limitation, insurance, real estate taxes, special assessments, management expense, office expense (including officer personnel), structural repairs, and replacement of total units of fans, ranges, heating plants, and refrigerators. The terms shall further exclude repairs that are necessitated for reasons other than ordinary wear and tear of the building and repairs necessary for unusual, extraordinary, or unforeseen occurrences which do not destroy the building, but merely render it less suited for the use to which it was intended, which are paid for by insurance.

### "VI.

"The plaintiff [PVM] and defendant [Stutsman] shall meet for an annual accounting some time after October 1st of each year, but no later than February 1st, and at that time it shall be determined whether the actual costs of operation and maintenance have exceeded $1,800.00, and it shall be determined whether or not real estate taxes have exceeded or not reached $15,064.18, and moneys will be exchanged between the parties according to the provisions hereinbefore contained.

"It is further agreed that the plaintiff [PVM] each year, at or before the time of the annual accounting, shall present to the defendant [Stutsman] a list of its actual expenditures for taxes and for operation and maintenance, with source documents as evidence required itemizing separately hours of labor and costs."

Apparently the clarifying language agreed to in the stipulation resulted, not in a clearer understanding between the parties, but in further dispute and this second lawsuit.

### Stutsman Cross-Appeal

■ Stutsman argues generally that because PVM did not "at or before the time of the annual accounting" in 1976 and 1977, present to Stutsman a list of its actual expenditures, the court should not have considered taxes for 1975 and 1976. Stutsman apparently does not dispute the amount of those taxes but in effect says that PVM waived its right to any reimbursement by not complying with paragraph VI of the stipulation, which required a list of expenditures each year no later than February 1st.

The trial court in findings numbered II, III, IV and V found that PVM did pay real estate taxes for 1975 and 1976 in excess of the agreed base sum and was entitled to credit therefor. There is no finding of fact or conclusion of law that indicates that there was a waiver or any other basis upon which PVM was entitled to this credit. The only statement we find as a basis for findings II, III, IV and V is in the trial court's memorandum decision as follows: "No harm can be shown to come to either side, nor is any penalty built into the contract."

The requirements in paragraph VI of the stipulation appear clear and unambiguous in requiring annual accountings and an annual listing of expenditures. The fact that there is no harm to anyone that this was not done, alone is not sufficient reason for the courts to, in effect, rewrite that portion of the contract. That is not to say that there may not be a legal and adequate basis under law or equity for not enforcing the

accounting requirement under the circumstances of this case. That determination, however, is a trial court function and we remand so that the preparation of an appropriate finding can be made, or a retrial, if deemed necessary by the trial court, in order to provide a basis for the required finding. See *Sand v. Red River Nat. Bank & Trust Company*, 224 N.W.2d 375, 378 (N.D. 1974). The existence of any doubt as to whether the trial court or the appellate court is the ultimate trier of fact issues is detrimental to the orderly administration of justice, impairs the confidence of litigants and the public, and multiplies unwarranted appeals. *Pendergrass v. N.Y. Life Ins. Co.*, 181 F.2d 136, 138 (8th Cir. 1950).

### PVM's Appeal

■ PVM argues that Rule 52(a), NDRCivP, is applicable and that the memorandum decision, the findings of fact, and the conclusions of law are not supported by the evidence, and then points out that this court has repeatedly said that:

"Construction of a written contract to determine its legal effect is a question of law for the court to decide." *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894, 896 (N.D.1978).

Before we can arrive at any disposition of this argument, which would apparently require a distinguishment between fact issues, law issues, and issues of mixed fact and law, we must examine the findings of fact, conclusions of law, and the memorandum decision to determine upon what basis the trial court acted. In paragraphs VIII and IX, the trial court finds as a fact that PVM "has failed in its burden" of proof. Very little additional explanation is found in the memorandum decision where the trial court merely said that PVM "made little attempt to delineate or explain any of the bills," PVM "is required to carry the burden of proof," and "his [PVM's] claim must fail."

These are the type of "findings of fact" which this court specifically rejected in *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972). See also comments on the pur-

poses of Rule 52(a) in *Peterson v. Hart*, 278 N.W.2d 133, 136 (N.D.1979).

The judgment is reversed and the case is remanded for the preparation of more adequate findings of fact or, if deemed necessary by the trial court, for a new trial.

No costs on appeal will be allowed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.