423 F.2d 1281
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,
v.
Marie HOLLOWAY, Associated Indemnity Corporation, a Foreign Corporation, Mildred Shoop and Wilbur Shoop, Defendants-Appellees.
Mildred SHOOP and Wilbur Shoop, Defendants-Appellants,
v.
ASSOCIATED INDEMNITY CORPORATION, a Foreign Corporation, Defendant-Appellee.
 No. 233-68.
 No. 234-68.
 United States Court of Appeals, Tenth Circuit.
 March 19, 1970.
 
 Joseph A. Sharp, Tulsa, Okl. (Best, Sharp, Thomas & Glass, Tulsa, Okl., of Counsel, with him on the brief) for plaintiff-appellant State Farm Mutual Automobile Insurance Co.
 Donald Church, Tulsa, Okl. (Church & Roberts, Tulsa, Okl., of Counsel, with him on the brief) for defendants-appellants Mildred Shoop and Wilbur Shoop.
 B. W. Tabor, Tulsa, Okl. (Rucker & Tabor, Tulsa, Okl., of Counsel, with him on the brief) for defendant-appellee Associated Indemnity Corporation.
 Before MURRAH, Chief Judge, and TUTTLE* and BREITENSTEIN, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from a judgment in favor of the defendants-appellees in a declaratory judgment act brought by the appellant, State Farm Mutual Automobile Insurance Company, to settle the question of its liability on a public liability automobile policy following an accident in which Marie Holloway had been found liable for injuries to Mildred and Wilbur Shoop in an accident which occurred on April 9, 1966 in Tulsa, Oklahoma.
 
 
 2
 The question that was required to be decided by the trial court, and which is now before us for decision, is whether either of the two insurance companies in the litigation is liable to the Shoops as insurers of Marie Holloway against whom the Shoops obtained a judgment somewhat in excess of $10,000. The facts are not in dispute, or at least, we must say that the trial court's findings of fact are all adequately supported by the evidence and we are unable to determine that any of these findings are clearly erroneous. The statement hereafter made with respect to the facts thus represent the background upon which we must base our determination as to the legal effects of the several relationships.
 
 
 3
 Prior to the accident in question, State Farm had issued a family automobile policy to Marie Holloway's husband, William Holloway. The policy issued by State Farm did not specifically cover the automobile which Mrs. Holloway was driving at the time of the accident; however, it did provide non-owned automobile coverage for Marie Holloway under certain circumstances. The exact language that outlines the circumstances that must be present in order to afford coverage will be expressly set out in our later discussion of the case.
 
 
 4
 Prior to the accident, Associated Indemnity had issued a family automobile policy to Robert and Evelyn Shaw, the parents of Marie Holloway.[1] This policy specifically covered the automobile involved in the accident, but by its terms it provided coverage for Marie only if she was a member of the household of the Shaws or under other particular circumstances; again we shall defer the statement of the precise terms of the policy until a later discussion.
 
 
 5
 Both of the above policies were in full force and effect on April 9, 1966, when Mrs. Holloway, driving the Shaw automobile, had her accident with the Shoops. The trial court found that the Associated policy afforded no protection to Marie Holloway, or through her, to the injured parties, but did find that the State Farm policy afforded coverage on the basis of the provisions of the "non-owned" car clause in the policy. In order to make clear the application of the findings of fact by the trial court to the respective policies, we here set out the provisions of the two policies.
 
 
 6
 In the Associated Indemnity Policy, we find the following:
 
 
 7
 "Persons Insured: The following are insureds under Part I:
 
 
 8
 1. The named insured and any resident of the same household, 2. Any other person using such automobile with permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permissions * * *"
 
 
 9
 In the State Farm Policy, there is the following wording:
 
 
 10
 "1. Coverages A and B applies to the use of a non-owned automobile by:
 
 
 11
 (a) The person named in the declarations, or,
 
 
 12
 (b) if residents of the same household, his spouse or the relatives of either * * * provided such use, operation, occupancy or custody is with the permission of the owner or person in lawful possession of such automobile."
 
 
 13
 In view of the fact that it is necessary, in determining the coverage afforded by the two policies, to determine the question of whose "household" Marie Holloway was a member of, it is necessary to state briefly what the facts are with respect to these circumstances. Her husband, William, went away on basic Army training, shortly after they were married and had set up house-keeping. During the time that he was at basic training, she was primarily visiting his parents. However, at the time of the accident and for a period of approximately two weeks before and after the accident, she was actually physically staying in the home of her own parents, Mr. and Mrs. Shaw. This was necessitated because Mrs. Shaw's mother would otherwise be in the Shaw home alone and Mrs. Holloway was helping out by staying there temporarily. This state of facts, of course, poses a nice question when we consider the fact that, as stated by this court in Hardesty v. State Farm Mutual Automobile Insurance Co. (10 Cir., 1966) 361 F.2d 176 and reiterated in Aetna Casualty & Surety Co. of Hartford, Conn. v. Means (10 Cir., 1967) 382 F.2d 26, "An insured under an automobile liability policy could legally maintain more than one household."
 
 
 14
 While we believe that the trier of facts might, under the circumstances here present, have held that Marie Holloway was a member of the household either of her husband, William, as it did, or that she was a member of the household of the Shaws, which it did not, or a member of the household of her husband's parents, which was not a material issue and which, therefore, was not passed upon, we are taught by the established jurisprudence, as particularly stated in Aetna Casualty & Surety Co., supra, that the question as to the inferences to be drawn presented a fact issue. It is properly a question normally to be submitted to a jury. So, here, was this a fact issue which was to be decided by the trial court. That court decided and made a finding of fact to the effect that at the time of the accident, Marie was a member of the household of her husband and that she was not a member of the household of her parents, Mr. and Mrs. Shaw.
 
 
 15
 Based on these findings of fact, Associated is clearly exonerated unless Marie would fall within subparagraph 2, supra, as a "person using such automobile with permission of the named insured, provided [her] actual operation * * * [was] within the scope of such permission * * *" The trial court made the further express finding that Marie was not using the automobile "within the scope of the permission granted her by her mother, Mrs. Shaw, or her father, Mr. Shaw." Thus, the trial court determined that Associated Indemnity had no liability under its policy. With this conclusion, we agree in light of the findings of fact which we cannot overrule as being clearly erroneous.
 
 
 16
 Turning next to the State Farm Policy, we find that the coverage, quoted above, applies to the use of a non-owned automobile if such non-owned automobile was being used by the named insured, William Holloway, or if the use was by a "resident of the same household," which Marie was, his spouse (which Marie was) and provided such use was "with the permission of [a] person in lawful possession of such automobile."
 
 
 17
 The appellees are here arguing that since subparagraph (b) speaks in terms of "use, operation, occupancy or custody" with permission of the owner, then it is clear that since Marie had custody of the automobile "with the permission" of Mrs. Shaw, even though she did not have authority actually to "use" it without having an experienced licensed driver with her, this is as far as the court need go to find that Marie was covered. We do not think this argument is adequate, because it is clear that where the words, "use, operation, occupancy or custody" are used in sub-paragraph (b), they are modified by the word under the main heading 1 which says that: "coverages (a) and (b) applies to the use of the non-owned automobile by: etc," and then sub-paragraph (b) speaks of "such use, operation, occupancy or custody." It is clear, therefore, that if we look only to whether Marie had lawful custody with permission of the owner, there would still be no coverage because there must also be the actual use of the car with permission of the owner. However, we look to the next part of sub-paragraph (b), and under that provision it seems perfectly clear that, although Marie did not have the permission of Mrs. Shaw to "use" the automobile under the circumstances, she nevertheless was a person "in lawful possession of such automobile" and by the precise language of sub-paragraph (b), being such person, she herself could give absolute permission to any other resident in the same household if such a person was a relative of the spouse of William Holloway, the unlimited right to use or operate the automobile. This being the case, we must conclude as contended for by the appellees that since the language of this contract of insurance would permit Marie, if she had a cousin or a father or mother living with her and her husband, but having no license, to take the car and drive it as she saw fit, then the contract must be construed as authorizing Marie as one in lawful possession of the automobile to permit herself to drive it freed of any restrictions.
 
 
 18
 The very difference in the language between that in the contract of State Farm and that of Associated Indemnity Corporation shows how State Farm could have protected itself, had it intended to do so, from such a construction of its policy. The Associated Indemnity policy could not be so construed as to permit Marie to have given herself permission to drive the automobile without complying with the restrictions placed upon her use of it by her mother. Sub-paragraph (b) of the State Farm policy, however, clearly permits this construction. Since, as we all know, where there is an ambiguity on the face of an insurance policy it must be construed against the insurance company, Universal Underwriters Insurance Co. v. Bush (10 Cir., 1962) 272 F.2d 675; Appleman's Insurance Law and Practice, Section 7386, we must so construe it.
 
 
 19
 It is interesting to note that the trial court's original findings of fact did not expressly find that at the time of the accident Marie Holloway was in lawful possession of the Shaw automobile. However, upon motion made on behalf of the Shoops, the trial court added a finding of fact to the following effect:
 
 
 20
 "12. The court finds that Marie Holloway was using the Ford automobile of her parents at the time of the accident while it was in her lawful possession."
 
 
 21
 With such finding in their favor, the Shoops must prevail in their contention that Marie at the time of the accident had authority to modify the limitations given to her by her mother as to the use of the automobile since the policy clearly gave her permission to do this with respect to any person who was a member of the household of William Holloway, and was a spouse, or a relative of such person.
 
 
 22
 We conclude that the trial court, based on its findings of fact properly found in favor of Associated Indemnity Corporation and in favor of Marie Holloway and the Shoops against State Farm Mutual.
 
 
 23
 The judgments are affirmed.
 
 
 
 Notes:
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 Actually Marie was a foster daughter of the Shaws, but for purposes of the trial and for our purposes, they were the same as natural parents
 
 
 
 24
 BREITENSTEIN, Circuit Judge (dissenting in part).
 
 
 25
 I agree with the majority that the fact findings of the trial court have record support and must be accepted. I disagree with the majority conclusion that those facts establish liability of State Farm under its policy.
 
 
 26
 The State Farm "non-owned automobiles" provision covers the use of the Shaw automobile by Marie as the wife of the named insured, William Holloway, living in his household "provided such use, operation, occupancy or custody is with the permission of the owner or person in lawful possession of such automobile."
 
 
 27
 At the time Marie received possession of the Shaw automobile and at the time of the accident, she did not have a regular Oklahoma driver's license but had a beginner's permit which required a licensed driver to be with her in any car which she was operating. At the time of the accident, Marie was driving alone.
 
 
 28
 The pertinent findings of the trial court are:
 
 
 29
 (1) "Marie was told that she couldn't use it [the Shaw automobile] unless she had a licensed driver in the car with her, and was not driving with the permission of the named insured."
 
 
 30
 (2) "Marie Holloway was not using the Ford automobile of her parents, Robert and Evelyn Shaw, at the time of the accident, while a resident of their household and with their permission."
 
 
 31
 (3) "Marie Holloway was using the Ford automobile of her parents at the time of the accident while it was in her lawful possession."
 
 
 32
 My associates recognize that Marie had only a qualified permission to use the Shaw car and that her use violated that permission. They reason that, because Marie had possession and could have given another unqualified permission, she could give herself unqualified permission. To me this is a non sequitur which is sustained by neither legal precedent nor logical analysis. The fact that Marie, as the one in possession, could give to another unqualified permission is immaterial. It simply did not happen. We are concerned with the use of the car by Marie, not by a third person.
 
 
 33
 My associates compare the language of the "persons insured" clause of the Associated policy with the "non-owned automobiles" clause of the State Farm policy. The clauses are distinguishable in the purposes they are intended to serve. Be that as it may, each clause requires permission. In the Associated policy that permission comes from the owner. In the State Farm policy it comes from the owner or person in possession. The majority opinion reads into the State Farm policy a non-existent ambiguity. It does so by the boot-strap reasoning that the possessory right of Marie extinguishes the limitation on her use.
 
 
 34
 A person who has a qualified right may not, unilaterally, remove the qualification. Otherwise, there would be no point in the imposition of the qualification. In the case at bar, the permission was qualified and the use was contrary to the qualification. The effect of the majority opinion is to delete from the State Farm policy the requirement that a non-owned automobile is covered only if its use is with permission.
 
 
 35
 The arguments of the Shoops that the insurance carriers are barred by their conduct from disclaiming liability have no merit. I would reverse the judgment in No. 233-68. So far as No. 234-68 is concerned, the findings of the trial court sustain the judgment in favor of Associated.